## CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Ford Motor Credit Co.

v.

Donald A. Henke
and Marianne L. Allen

March 26, 1991

Case No. (Law) 4535

## By JUDGE JAY T. SWETT

This matter was heard on March 14, 1991. After considering the evidence presented at the hearing and argument of counsel, the following are my findings and rulings.

The evidence showed that the defendants, Donald A. Henke and Marianne L. Allen, purchased a 1987 Lincoln automobile from Medlin Lincoln-Mercury, Inc., on July 2, 1987. The purchase price was $26,697.00. The car was financed by the plaintiff, Ford Motor Credit Company. The amount financed was $26,785.22.

By July of the following year, the defendants had fallen behind in their monthly payments of $596.00 per month. The car was repossessed on August 17, 1988, at the home of the defendants. Apparently, the car was taken to Harrisonburg, Virginia, for sale at the Harrisonburg Auto Auction. On August 22, 1988, Ford sent a "Notice of Repossession and Right to Redeem" to the defendants. The car was eventually sold at the Harrisonburg Auto Auction on October 5, 1988, for $14,450.00. Thereafter, Ford filed suit against the defendants for the amount of $10,227.70 to recover the cost of the repossession, the deficiency due under the Retail Installment Contract and attorney

fees. Defendant Henke filed a grounds of defense denying he was liable to Ford contending Ford breached one or more provisions of the. Retail Installment Contract and that Ford did not comply with the provisions of § 8.9-504 of Virginia's Uniform Commercial Code. Defendant Allen never filed a ground of defense. At the time of the hearing, she was in default. She appeared at the hearing without counsel.

The defendants contend that Ford Motor Credit failed to follow the terms of the Retail Installment Contract. Under paragraph F of the contract entitled "Default," Ford was obligated to send a notice to the defendants advising that they could buy back the vehicle for the amount shown in the notice and that they could buy it back up to the time that Ford sold it or entered into a contract to sell it. Here, the Notice of Repossession and Right to Redeem, plaintiff's exhibit 3, was the notice called for under the contract. The defendants admit they received it. The notice advised them of the amount they would have to pay to buy the vehicle back.

Mr. Henke testified that after the repossession on August 17, 1988, he called Ford Motor Credit and spoke with Ms. Pam Hebner whose name was on the bottom of the Notice of Repossession and . Right to Redeem. Mr. Henke told Ms. Hebner that he was in the process of trying to sell the car by private sale and asked about the location of the car and how he might recover the car to be able to sell it by private sale. Mr. Henke testified that Ms. Hebner said she would get back to him but never did. Mr. Henke testified that he called Ms. Hebner on several occasions but could never get information about the location of the car.

Ms. Deidre McCauley was called to testify by Mr. Henke. She testified she had been contacted sometime in the summer of 1988 by Mr. Henke who indicated that he wanted to sell the Lincoln. Ms. McCauley had been the sale person at Medlin Lincoln-Mercury who sold the car to the defendants in 1987. Mr. Henke gave the car to Ms. McCauley for two or three days in August of 1988, during which time she found a buyer from northern Virginia who was willing to purchase it for $24,995.00. However, when she called Mr. Henke to tell him about the buyer, she was told that the car had been repossessed. There was

no evidence that the person who Ms. McCauley had found to purchase the car tendered a check to either Ms. McCauley or Mr. Henke after the car was repossessed on August 17th. However, she testified that there was a written agreement and that the purchaser had arranged his own financing. When Mr. Henke could not recover the car from Ford, Ms. McCauley sold another vehicle to the customer.

The Notice of Repossession and Right to Redeem advised the defendants that they would have to pay Ford Motor Credit the sum of $25,862.59 in order to get the car back. The notice told the defendants the car would not be sold before ten days from the date of the notice, August 22, 1988, and they would be able to get it back any time before it was actually sold, presumably by paying the total amount due. The notice also indicated that they property would be sold at a "private sale" after ten days from the date of the notice unless redeemed by the defendants. The notice did not give the defendants any information about the circumstances of the private sale such as date, time, location or the like.

Testifying on behalf of Ford Motor Credit was Mr. Scott Lackovitch. Mr. Lackovitch testified from company records since he was not employed by Ford Motor Credit in 1988 when the car was repossessed and sold. He testified that he was generally familiar with the methods used to sell cars. He described a "private sale," as applied to this case, as one limited to automobile dealers. The general public is neither invited nor permitted to attend. He testified that Ford had contracts with a number of dealer auctions. The private dealer auctions apparently establish wholesale automobile values which eventually find their way into books published by the National Automobile Dealers Association. He testified that Ford's policy was to have someone oversee such sales and that the person had the power to refuse to sell the vehicle if the figure was too low. He could not say whether such a person was present when the defendants' car was sold. He testified that the price of $14,450.00 obtained at the Harrisonburg Auto Auction in October of 1988 was $25.00 lower than the National Automobile Dealers Association wholesale book value figure of $14,475.00.

The parties agree that § 8.9-504 of Virginia's Uniform Commercial Code controls this case. Under that section,

Ford, as a secured party, has the right to sell or otherwise dispose of the automobile upon default. However, there are limitations on the secured party in disposing of the property. The primary limitation on the secured party is that "every aspect of the disposition, including the method, manner, time, place and terms must be commercially reasonable," § 8.9-504(3). The statute allows the disposition to be by public or private sale. If disposition is by public sale, the secured party is required to give the debtor reasonable notification of the time and place of the public sale. If the sale is to be a private sale, the secured party is required to give reasonable notification of the time after which the private sale will be made. If the disposition is by public sale, the secured party may repurchase the property. If the collateral is a type which is the subject of widely distributed standard price quotations, then the debtor may purchase the property at a private sale. § 8.9-504(3). The official comment to § 8.9-504 states that although public sales are permitted, private sales are encouraged because it is frequently the case that private sales through "commercial channels" will result in higher prices for the sale of the collateral.

As a threshold matter, the court follows the general rule regarding the burden of proof in a case where a challenge is made to the reasonableness of the sale. The general rule is that the burden is on the holder of the security interest to prove that the sale complied with the provisions of the Code. 79 C.J.S., *Secured Transactions*, § 108.

Whether the sale was commercially reasonable depends in part on whether the sale was a private or a public sale. Ford contends that the sale was a private sale as opposed to a public sale. The Code requires that if the sale was a public sale, then the debtors were entitled to receive notification of the time and place of the sale. By characterizing the sale as a "private sale," Ford was not required to give any further notice other than a date after which the private sale could occur.

The evidence here is that after Ford repossessed the car, the car found its way to the Harrisonburg Auto Auction. Six or seven weeks after it was repossessed, it was sold at an auto auction limited to automobile dealers. Although Mr. Henke made efforts to determine when and where the auction was going to take place, he

was not given this information by Ford. Apparently, according to Ford's witness, it would not have mattered since only dealers were permitted to participate in the auction. The automobile was sold on October 5, 1988, for $14,450.00, which apparently was its wholesale value. There was no explanation why so much time passed between the date of repossession and the date of sale. There was no evidence that Ford made efforts to advertise the vehicle, solicit bids or otherwise do what would normally be expected in the course of a private sale. As noted earlier, the official comments encourage private sales under the theory that private sales will generate higher prices. While it is not clear from the comment, it appears that a private sale would likely generate bids that would be close to retail or fair market value as opposed to a wholesale or an auction block price that is more typical of public sales. The trade-off between the private sale and the public sale is that the debtor has the opportunity to bid in at the public sale and can thereby protect the value of the collateral which he is unable to do in a private sale.

The evidence from the debtor here was that shortly after the car was repossessed, an automobile salesperson was able to obtain a purchaser willing to pay just under $25,000.00 for the car. While this price seems high given the mileage and expected depreciation on this vehicle, it is evidence that the value of the vehicle, at least at the retail level, was substantially greater than $14,450.00. How much greater, no one can say. However, the fact that Ford considered the sale as a private sale for purposes of the Code denied Mr. Henke the opportunity to participate or bid in at a sale that by its very nature would have only generated at best a wholesale resale price.

Viewing the evidence as a whole, I do not find that under the circumstances here the sale of the defendants' collateral meets the commercial reasonableness requirement under § 8.9-504. By electing to sell the vehicle at a "private" sale, and thereby denying the debtors access to the sale itself, Ford was under an obligation to make a greater effort to increase the likelihood that the collateral would be sold at a value that would be above wholesale. What those efforts should have been is not for this court to say. It is sufficient that I find Ford has not

met its burden to demonstrate that the sale was commercially reasonable.

Accordingly, judgment will be rendered in favor of the defendant, Donald A. Henke, and against the plaintiff.

With regard to the defendant Marianne Allen, she never filed responsive pleadings to the Motion for Judgment. She never requested leave to file a late response. At trial Ford moved for default judgment against Ms. Allen. However, the court cannot grant the motion because service on Ms. Allen was by posting. Section 8.01-296(2)(b) and Rule 3:17 require ten days' notice before judgment by default may be entered. The file does not reflect that such notice was given. Therefore, judgment against Ms. Allen for default must be denied.